UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-                                   10 CR 431 (CM)

DEREK ANDRE ENGLISH, et al.,

                   Defendants.

----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT RODNEY JOHNSON'S PRETRIAL MOTIONS

LAW OFFICES OF JEFFREY LICHTMAN
750 Lexington Avenue
15th Floor
New York, New York 10022
Ph:  (212) 581-1001
Fax: (212) 581-4999

*Attorneys for Rodney Johnson*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iii

PRELIMINARY STATEMENT ...........................................................................1

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................3

POINT I:

    COUNT ONE OF THE INDICTMENT MUST BE DISMISSED
    AS UNCONSTITUTIONALLY VAGUE .........................................................3

POINT II:

    FAILING DISMISSAL, THE GOVERNMENT SHOULD PROVIDE
    A BILL OF PARTICULARS ...........................................................................5

POINT III:

    THE SEARCHES OF JOHNSON'S VEHICLE  AND 209-03 41st
    AVENUE WERE CONSTITUTIONALLY IMPERMISSIBLE ........................7

    SUBPOINT A:

        THE WARRANTLESS SEARCH OF JOHNSON'S
        VEHICLE LACKED PROBABLE CAUSE AND
        CANNOT BE SAVED BY INEVITABLE DISCOVERY .........................7

    SUBPOINT B:

        THE SEARCH OF 209-03 41st AVENUE OCCURRED
        BEFORE AGENTS RECEIVED A WARRANT AND
        ECLIPSED THE SCOPE OF THE ARGUABLY PERMISSIBLE
        PROTECTIVE SWEEP .........................................................................14

POINT IV:

    THE GOVERNMENT SHOULD BE COMPELLED TO DISCLOSE
    ITS LIST OF WITNESSES .............................................................................23

POINT V:

      THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE
      RULE 404(b) EVIDENCE SIXTY DAYS BEFORE TRIAL .........................................24

POINT VI:

      THE DEFENDANTS ARE  ENTITLED TO PRETRIAL
      DISCLOSURE OF ANY AND ALL INFORMATION
      FALLING WITH THE PURVIEW OF *BRADY V. MARYLAND*
      AND ITS PROGENY ......................................................................................................25

POINT VII:

      JOHNSON JOINS IN THE MOTIONS OF HIS CODEFENDANTS
      TO THE EXTENT THAT THEY ARE APPLICABLE TO HIM ...................................27

CONCLUSION ............................................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                      *Page*

Aguilar v. Texas, 378 U.S. 108 (1964) ...................................................................9

Alabama v. White, 496 U.S. 325 (1990) ..............................................................10

Arizona v. Gant, 129 S.Ct. 1710 (2009) ..............................................................22

Arizona v. Hicks, 480 U.S. 321 (1987) ................................................................12

Brady v. Maryland, 373 U.S. 83 (1963) ..............................................1, 2, 26, 27

California v. Acevedo, 500 U.S. 565 (1991) .......................................................17

California v. Carney, 471 U.S. 386 (1985) ............................................................9

Colorado v. Bertine, 479 U.S. 367 (1987) ..............................................2, 13, 14

Dorman v. United States, 435 F.2d 385 (D.C. Cir. 1970) ..................................18

Franks v. Delaware, 438 U.S. 154 (1978) ...........................................................16

Giglio v. United States, 405 U.S. 150 (1972) ......................................................26

Illinois v. Gates, 462 U.S. 213 (1983) .................................................................10

Illinois v. Lafayette, 462 U.S. 640 (1983) ...........................................................13

Jones v. United States, 362 U.S. 257 (1960) .......................................................16

Katz v. United States, 389 U.S. 347 (1967) ...........................................................9

Kyles v. Whitely, 514 U.S. 419 (1995) ........................................................ 26, 27

Maryland v. Buie, 494 U.S. 325 (1990) ................................... 2, 17, 20, 22

Mincey v. Arizona, 437 U.S. 385 (1978) ..................................................... 19, 21

Payton v. New York, 445 U.S. 573 (1980) ...........................................................15

Pennsylvania v. Labron, 518 U.S. 938 (1996) ............................................................ 9

Rakas v. Illinois, 439 U.S. 128 (1978) ................................................................... 16

Russell v. United States, 369 U.S. 749 (1962) ..................................................... 4, 5

Segura v. United States, 468 U.S. 796 (1984) ........................................................19

Smith v. Maryland, 442 U.S. 735 (1979) .................................................................16

Soldal v. Cook County, Ill., 506 U.S. 56 (1992) ....................................................13

South Dakota v. Opperman, 428 U.S. 364 (1976) .............................................. 8, 13

Spinelli v. United States, 393 U.S. 410 (1969) ....................................................... 9

United States v. Agapito, 620 F.2d 324 (2d Cir. 1980) .......................................... 20

United States v. Agone, 302 F. Supp. 1258 (S.D.N.Y. 1969) ........................... 2, 3, 5

United States v. Aronson, No. 98 Cr. 564, 1999 WL 97923 (S.D.N.Y. Feb. 24, 1999)...............25

United States v. Atkinson, 653 F. Supp. 668 (S.D.N.Y. 1987) .............................11, 12

United States v. Bagley, 473 U.S. 667 (1985) ...................................................... 26

United States v. Blue, 78 F.3d 56 (2d Cir.1996) ................................................... 22

United States v. Bortnovsky, 820 F.2d 572 (2d Cir. 1987) .....................................5

United States v. Cannone, 528 F.2d 296 (2d Cir. 1975) .......................................1, 23

United States v. Cook, 348 F. Supp.2d 22 (S.D.N.Y. 2004) ................................. 10

United States v. Coppa, 267 F.3d 132 (2d Cir.2001) ......................................... 26, 27

United States v. DeGroote, 122 F.R.D. 131 (W.D.N.Y. 1988) ............................... 7

United States v. De Yian, No. 94 Cr. 719, 1995 WL 368445 (S.D.N.Y. June 21, 1995) .............25

United States v. Duguay, 93 F.3d 346 (7th Cir. 1996) ....................................12, 13, 14

United States v. Elgisser, 334 F.2d 103 (2d Cir. 1964) ...........................................10

United States v. Elmore, 482 F.3d 172 (2d Cir. 2007) ..............................................10

United States v. Espy, 1996 WL 637759 (E.D.La. 1996) .......................................7

United States v. Feola, 651 F. Supp. 1068 (S.D.N.Y. 1987) ........................... 6

United States v. Fields, 113 F.3d 313 (2d Cir. 1997) ................................... 16

United States v. Fox, 788 F.2d 905 (2d Cir.1986) ........................................ 9

United States v. Gaskin, 364 F.3d 438 (2d Cir. 2004) .................................. 9

United States v. Hamilton, 538 F.3d 162 (2d Cir. 2008) ............................. 17

United States v. Jackson, 493 F. Supp.2d 592 (W.D.N.Y. 2006) ................. 10

United States v. Jenkins, 876 F.2d 1085 (2d Cir. 1989) ......................... 13, 14

United States v. Karo, 468 U.S. 705 (1984) ............................................... 18

United States v. Kiyuyung, 171 F.3d 83 (2d Cir.1999) ........................... 18, 20

United States v. Lefkowitz, 285 U.S. 452 (1932) ........................................ 18

United States v. Lino, No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. December 29,
2000)................................................................................................... 1, 6, 25

United States v. McDonnell, 696 F. Supp. 356 (N.D. Ill. 1988) .................... 5

United States v. MacDonald, 916 F.2d 766 (2d Cir.1990) ....................... 19, 21

United States v. Martin, 562 F.2d 673 (D.C. Cir 1977) ............................... 20

United States v. Martino, 664 F.2d 860 (2d Cir. 1981) ........................... 19, 21

United States v. Medina, 944 F.2d 60 (2d Cir. 1991) .............................. 19, 22

United States v. Miner, 956 F.2d 397 (2d Cir. 1992) ................................... 13

United States v. Morgan Vargas, 376 F.3d 112 (2d Cir. 2004) ..................... 21

United States v. Moss, 963 F.2d 673 (4th Cir. 1992) .................................. 19

United States v. Murphy, 516 F.3d 1117 (9th Cir. 2008) .............................................. 19

United States v. Nachamie, 91 F. Supp.2d 565 (S.D.N.Y. 2000) ...............................1, 25

United States v. Nance, 533 F.2d 699 (D.C. Cir. 1976) ............................................... 4

United States v. Navas, 597 F.3d 492 (2d Cir. 2010) ............................................... 7, 9

United States v. Pena, 961 F.2d 333 (1992) ......................................................... 10, 12

United States v. Reddy, 190 F. Supp.2d 558 (S.D.N.Y. 2002) .................................... 25

United States v. Reed, 572 F.2d 412 (2d Cir. 1978) .............................................. 18, 19

United States v. Rollack, 90 F. Supp.2d 263 (S.D.N.Y. 1999) .................................... 11

United States v. Ross, 456 U.S. 798 (1982) ......................................................... 2, 9

United States v. Rueb, No. 00 Cr. 91 (RWS), 2001 WL 96177 (S.D.N.Y. February 5, 2001) ....23

United States v. Santiago, 174 F. Supp.2d 16 (S.D.N.Y. 2001) ...................................6

United States v. Santos, 303 F. Supp.2d 333, 347-48 (S.D.N.Y. 2003) .....................2, 22

United States v. Schaper, 903 F.2d 891 (2d Cir. 1990) ............................................. 22

United States v. Shabani, 513 U.S. 10 (1994) ......................................................... 3

United States v. Shakur, 560 F. Supp. 361, 364 (S.D.N.Y. 1983) .........................19, 21

United States v. Simmons, No. 02 Cr. 314 (JG), 2003 WL 145261 (E.D.N.Y. January 9,

2003).................................................................................................. 17

United States v. Stavroulakis, 952 F.2d 686 (2d Cir. 1992) ....................................... 4

United States v. Steppello, 733 F. Supp.2d 347 (N.D.N.Y. 2010) .....................7, 10, 11

United States v. Taylor, 707 F. Supp. 696 (S.D.N.Y. 1989) ...................................... 6

United States v. Tomasetta, 429 F.2d 978 (1st Cir. 1970) ....................................... 4, 6

United States v. Torres, 901 F.2d 205 (2d Cir. 1990) ............................................... 7

United States v. Triana-Mateus, No. 98 Cr. 958 (SWK), 2002 WL 562649 (S.D.N.Y. April 15, 2002) .................................................................................................................... 23

United States v. Turkish, 458 F. Supp. 874 (S.D.N.Y. 1978) ........................................ 23

United States v. Upton, 856 F. Supp. 727 (E.D.N.Y. 1994) (Glasser, J.) ................. 3, 4, 5

United States v. Wagner, 989 F.2d 69 (2d Cir. 1993) .................................................. 10

United States v. Wilson, 1997 WL 10035 (S.D.N.Y. Jan. 10, 1997)............................... 7

United States v. Wozniak, 126 F.3d 105 (2d Cir. 1997) ................................................. 4

United States v. Zadiriyev, No. 08 CR 1327 (HB), 2009 WL 1033365  (S.D.N.Y. April 17, 2009)............................................................................................................................ 19

## Statutes and Rules

18 U.S.C. § 922(g) ........................................................................................................... 1

18 U.S.C. § 924(c) ....................................................................................................... 1, 24

21 U.S.C. § 846 ................................................................................................................ 1

Fed.R.Crim.P. 7 ............................................................................................................ 1, 3

Fed.R.Evid. 404 ...................................................................................................... 1, 24, 25

## PRELIMINARY STATEMENT

Defendant Rodney Johnson respectfully submits this memorandum of law in support of his pretrial motions for an Order: i) dismissing Count One of the Indictment as unconstitutionally vague pursuant to Fed.R.Crim.P. 7(c)(1); or ii) in the alternative, requiring the government to provide a bill of particulars pursuant to Fed.R.Crim.P. 7(f); iii) suppressing the fruits of the impermissible searches of Johnson's vehicle and the apartment located at 209-03 41st Avenue in Queens; iv) requiring the government to provide a list of the names and addresses of the individuals that it intends to call as witnesses in its case-in-chief pursuant to United States v. Cannone, 528 F.2d 296 (2d Cir. 1975); United States v. Lino, No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. December 29, 2000); v) requiring the government to provide early notice of its intent to use Rule 404(b) evidence pursuant to United States v. Nachamie, 91 F. Supp.2d 565 (S.D.N.Y. 2000); vi) requiring the government to abide by its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963); and vii) adopting the motions of his codefendants where applicable to him.

## INTRODUCTION

Defendant Johnson is charged in a May 18, 2010 Indictment with one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, one count of using a firearm in furtherance of narcotics trafficking, in violation of 18 U.S.C. § 924(c), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g). Beyond simply tracking the language of the statute, Count One, which charges the

narcotics conspiracy, provides virtually no particulars: the indictment omits a "Means and Methods" section and fails to identify the defendant's role or any overt acts. Indeed, the only detail that is provided in the entire indictment as to the defendant's participation in a conspiracy is the date on which it purportedly occurred and the type of narcotics at issue. Accordingly, the indictment fails to fairly apprise Johnson of the allegations against him and Count One must be dismissed. See United States v. Agone, 302 F. Supp. 1258, 1261 (S.D.N.Y. 1969).

In addition to the deficient indictment, the searches of both Johnson's vehicle and the apartment located at 209-03 41st Avenue in Queens were constitutionally impermissible. First, the warrantless search of Johnson's 2005 Jeep Grand Cherokee could not have been based upon probable cause or reasonably trustworthy information and cannot be saved by inevitable discovery because impoundment was not allowable. Colorado v. Bertine, 479 U.S. 367, 375 (1987); United States v. Ross, 456 U.S. 798, 825 (1982). Second, the search of the apartment located at 209-03 41st Avenue took place before agents received a warrant, and eclipsed the scope of any arguably permissible "protective sweep." Maryland v. Buie, 494 U.S. 325, 335 (1990). Accordingly, all items seized pursuant to both searches must be suppressed. United States v. Santos, 303 F. Supp.2d 333, 347-48 (S.D.N.Y. 2003).

Finally, due to the lack of detail provided in the indictment and the absence of any credible threat to potential witnesses, Johnson requests that the government be compelled to provide a witness list for trial, early disclosure of Rule 404(b) evidence, and pretrial discovery of any and all information falling within the purview of Brady v. Maryland and its progeny. 373 U.S. at 87.

2

## ARGUMENT

## POINT I

## COUNT ONE OF THE INDICTMENT MUST BE DISMISSED AS UNCONSTITUTIONALLY VAGUE

As noted, Count One of the indictment[1] supplies virtually no details as to the particulars of the drug conspiracy that is charged against the defendant. Lacking the mention of any overt acts,[2] a "Means and Methods" section, or any other detailed information, Count One does not provide any guidance as to the defendant's role in the conspiracy or any explanation as to how the conspiracy worked. Given this extraordinary vagueness, we contend that Count One should be stricken, pursuant to Fed.R.Crim.P. 7(c)(1), in that it does not begin to provide Johnson with fair notice of the charges against him. See Agone, 302 F. Supp. at 1261 (dismissing indictment for lack of particularity).

Put another way, because it "fail[s] to include **any** specifics regarding the nature" of the crime alleged, United States v. Upton, 856 F. Supp. 727, 740 (E.D.N.Y. 1994) (Glasser, J.) (emphasis in original), Count One runs afoul of

> the Supreme Court's caveat that when the definition of an offense includes generic terms, it is **not** sufficient that the indictment shall charge the offence in the same generic terms as in the definition; **but it must state the species, – it must descend to particulars**.

-----

[1] Indictment attached as Exhibit A to the May 4, 2011 Affirmation of Jeffrey Lichtman, Esq. ("Lichtman Aff.")

[2] While the government need not prove the commission of any overt acts in establishing a § 846 conspiracy, United States v. Shabani, 513 U.S. 10 (1994), they would aid significantly in narrowing down the charged conduct at issue.

United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (citations and internal quotes omitted) (emphasis supplied), cert. denied, 504 U.S. 926 (1992); accord, e.g., Russell v. United States, 369 U.S. 749, 765 (1962) (statutory terms "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged"); United States v. Nance, 533 F.2d 699, 701 (D.C. Cir. 1976) (statutory "language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged").

If Count One is permitted to stand, the government could convict "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted [Johnson]," Russell, 369 U.S. at 770 – a flagrant violation of his Fifth and Sixth Amendment rights. See Upton, 856 F. Supp. at 738 (an "indictment must contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury") (citation and internal quotes omitted); see also United States v. Wozniak, 126 F.3d 105 (2d Cir. 1997) (§ 846 conviction reversed where evidence at trial – while sufficient to convict under the statute – nevertheless differed from that which was alleged in the indictment); United States v. Tomasetta, 429 F.2d 978, 980 (1st Cir. 1970) ("without sufficient information to identify that conduct which the grand jury has deemed adequate to support an indictment, an accused is at a material disadvantage in meeting the charge against him").

This Indictment suffers from the same fatal infirmities that plagued the above-identified cases. For here too, Count One's lack of particularity fails abjectly to apprise Johnson of the "core of criminality" at issue. Russell, 369 U.S. at 764. In turn, this defect renders Count One impossible to defend, and leaves the government free to convict on activity different from that

"intended by the grand jury." <u>Agone</u>, 302 F. Supp. at 1261.  Put simply, Johnson should not be forced to "hazard" a "guess" at the charges against him.  <u>United States v. McDonnell</u>, 696 F. Supp. 356, 360 (N.D. Ill. 1988).  Lastly, Count One cannot be salvaged at this stage as the Supreme Court has held that "a bill of particulars cannot save an invalid indictment." <u>Russell</u>, 369 U.S. at 770; <u>Upton</u>, 856 F. Supp. at 738 ("a bill of particulars cannot cure a [defective] indictment").


## POINT II

### FAILING DISMISSAL, THE GOVERNMENT SHOULD PROVIDE A BILL OF PARTICULARS

As we argued in **POINT I**, Count One of the Indictment is unconstitutionally vague, and cannot be saved by a Bill of Particulars.  <u>Russell</u>, 369 U.S. at 770.  Nonetheless, should this Court disagree, Johnson is plainly entitled to certain particulars without which he will be "unable to prepare adequately for trial," or to "interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987).  Hence, absent specification of the nature and scope of this conspiracy – *e.g.*, its purported means, methods, ends and members – Johnson can only guess the conduct with which he is charged.  And with no inkling of the charge's substance, how can Johnson hope to defend it, let alone invoke his double jeopardy rights in any future prosecution?  Plainly, he cannot, and unless the government delineates the conduct embraced by Count One, Johnson could be vulnerable to multiple prosecutions for the same activities.

Worse still, on Count One's threadbare allegations, the government could vary the charges at will. That is, the government would be able to secure a conviction "based on evidence of [conduct] completely divorced from that upon which the grand jury based its indictment." Tomasetta, 429 F.2d at 980 (1st Cir. 1970). Once again, exposure to such variances would eviscerate the Fifth Amendment's Notice and Presentment Clause. With these themes in mind, we turn to our specific requests for particulars:

1.     Identify the "others" referenced in paragraphs 1 and 2 and the roles the defendant and each co-conspirator had in the charged conspiracy.

2.     Specify the means and methods alleged to have been employed by the defendant and his co-conspirators in conducting and participating in the conduct of the conspiracy.

3.     Identify "elsewhere" referenced in paragraph 1.

In essence, these requests seek the identities and roles of the defendant's alleged accomplices and unindicted coconspirators. Courts routinely order such disclosure – especially where the conspiracy is as nebulous and open-ended as this one. See, e.g., United States v. Santiago, 174 F. Supp.2d 16, 42 (S.D.N.Y. 2001) (Marrero, J.) (in charged narcotics conspiracy, court ordered particulars including how defendant was alleged to have participated in conspiracy, approximate dates and times of that participation, and identities of any unindicted co-conspirators with whom defendant participated in conspiracy); Lino, 2001 WL 8356, at *12 ("[r]equests for names of unindicted co-conspirators are fairly common and often are granted by district courts"); United States v. Taylor, 707 F. Supp. 696, 699 (S.D.N.Y. 1989); United States v. Feola, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989) (Table), cert. denied, 493 U.S. 834 (1989) (both directing the government to provide the names of

unindicted coconspirators in a bill of particulars); <u>United States v. Torres</u>, 901 F.2d 205, 233-34

(2d Cir. 1990) (District Court has discretion to require same), <u>cert. denied</u>, 498 U.S. 906 (1990);

<u>United States v. Wilson</u>, 1997 WL 10035 (S.D.N.Y. Jan. 10, 1997) (LMM); <u>United States v.</u>

<u>Espy</u>, 1996 WL 637759 at *1 (E.D.La. 1996); <u>United States v. DeGroote</u>, 122 F.R.D. 131, 137-

39 (W.D.N.Y. 1988).  Indeed, without such information, the government could convict on an

entirely different conspiracy than the one charged in the Indictment.  And Johnson would be

powerless to object.


## POINT III

### THE SEARCHES OF JOHNSON'S VEHICLE AND 209-03 41st AVENUE WERE CONSTITUTIONALLY IMPERMISSIBLE

**A.    The Warrantless Search of Johnson's Vehicle Lacked Probable Cause and Cannot Be Saved by Inevitable Discovery**

It is irrefutable that the search of Johnson's vehicle, whether occurring in the vicinity of

1383 Sixth Avenue or at the "NYFD garage,"[3] occurred without a warrant and therefore, must

have been supported by probable cause.  <u>United States v. Navas</u>, 597 F.3d 492, 497 (2d Cir.

2010).  Here, agents based their probable cause determination on uncorroborated claims of an

untested informant whom agents had arrested only moments before.  Because such baseless

finger pointing fails to yield sufficient cause, all items seized pursuant to the warrantless search

of the vehicle must be suppressed as "tainted fruit."  <u>United States v. Steppello</u>, 733 F. Supp.2d

347, 356 (N.D.N.Y. 2010) (no probable cause exists where "police had nothing more than a

partially corroborated account of a criminal informant with no history of reliability").  Moreover,

---

[3] May 5, 2010 Non-Drug Property Voucher, attached as Exhibit B.

because there was no non-"investigatory" reason to impound Johnson's vehicle (the Jeep was seized <u>hours before</u> he was arrested in a different borough of New York, and no "community caretaking function" existed) the government is left unable to rely on inevitable discovery subsequent to an inventory search. <u>South Dakota v. Opperman</u>, 428 U.S. 364, 368-69 (1976).

### 1.    Background

According to agents, on April 27, 2010, a Federal Express package bound for a UPS Store located at 1383 Sixth Avenue in Manhattan containing approximately five kilograms of cocaine was intercepted by officers of the Los Angeles County Sheriff's Department and replaced by a substitute package for delivery. May 14, 2010 Affidavit of SA William M. Johnston, at ¶ 5.[4] The following day, agents arrested the individual that purportedly retrieved that package (identified as "CW-1"), who consented to speak with authorities immediately thereafter. April 28, 2010 Affidavit of SA Carlos Giraldo, at ¶¶ 8-9.[5] According to CW-1, defendant Johnson was driving a black Jeep Grand Cherokee parked in the vicinity, and was "scheduled to pick up another package containing narcotics from a different store that day." Ex. C at ¶ 7. CW-1 also informed authorities that "he knew the Jeep had a firearm in a hidden compartment." <u>Id.</u> "Shortly [thereafter] ... DEA agents looked into the interior of the Jeep. In the back seat, agents saw a package similar in size and shape to [the substitute package]." <u>Id.</u> at ¶ 8. Later that day, at

---

[4] Attached as Exhibit C.

[5] Attached as Exhibit D.

8

the NYFD garage, agents purportedly completed a search of the Jeep and discovered, *inter alia*, approximately five kilograms of cocaine and a firearm.[6]  Id. at ¶ 9.

### 2.    The Warrantless Search of the Vehicle Lacked Probable Cause

It is well established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967).  "One such exception is the 'automobile exception.'  It permits law enforcement to conduct a warrantless search of a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband."  Navas, 597 F.3d at 497 quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996); see also Ross, 456 U.S. at 809; California v. Carney, 471 U.S. 386, 392 (1985); United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004). This exception is based on two rationales: the inherent mobility of a vehicle and the reduced expectation of privacy in its contents.  Carney, 471 U.S. at 392.

As is often recited, probable cause "exists where the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  United States v. Fox, 788 F.2d 905, 907 (2d Cir.1986) (internal quotations and citation omitted).  While the two-pronged tested set forth in Aguilar v. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969) no longer applies - leaving officers to

---

[6] According to the April 28, 2010 Drug Property Voucher, attached as Exhibit E, the cocaine, identified as "Exhibit 9," was "seized by SA Carlos Giraldo" and "transported to the NYFD by SA Johnston."  It is therefore unclear if the vehicle was searched at the scene prior to its impoundment.

make their probable cause determinations based on the "totality of the circumstances," Illinois v. Gates, 462 U.S. 213, 230-31 (1983), "those factors that had been considered critical under Aguilar and Spinelli - an informant's **veracity**, **reliability**, **and basis of knowledge** - remain highly relevant in determining the value of his report." Alabama v. White, 496 U.S. 325, 328 (1990) (internal citation and quotation omitted) (emphasis supplied); United States v. Wagner, 989 F.2d 69, 72-73 (2d Cir. 1993) ("information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable information, or if it is corroborated in material respects by independent evidence").

It is the government's burden to establish that probable cause existed for a warrantless search, United States v. Elgisser, 334 F.2d 103, 110 (2d Cir. 1964), and "[a]n evidentiary hearing ... ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." United States v. Pena, 961 F.2d 333, 338 (1992) (internal citations and quotation omitted).

Where an informant "has no track record of providing reliable information to law enforcement, more corroboration is needed than for an informant with a reputation for being reliable ...." Steppello, 733 F. Supp.2d at 351; United States v. Elmore, 482 F.3d 172, 180 (2d Cir. 2007) (the level of corroboration necessary to establish an informant's veracity operates on a "sliding scale" based on the informant's track record of reliability and whether his identity is known); see, e.g., United States v. Jackson, 493 F. Supp.2d 592, 609 (W.D.N.Y. 2006) (allegations of untested confidential informants were corroborated by independent investigation and police surveillance); United States v. Cook, 348 F. Supp.2d 22, 25 (S.D.N.Y. 2004) (same);

10

United States v. Rollack, 90 F. Supp.2d 263, 269 (S.D.N.Y. 1999) (informant had provided

"years" of reliable tips and officers had purchased drugs from the defendant "only days before");

United States v. Atkinson, 653 F. Supp. 668, 673-74 (S.D.N.Y. 1987) (recent arrestee's tip

concerning explosive device, which was corroborated only by the existence of the container he

described at the claimed location, underlined failed to give rise to probable cause for a warrantless search).

Steppello also concerned the uncorroborated allegations of a recently arrested - and

recently turned - informant and merits further examination. There, a confidential informant was

arrested with two and one half ounces of cocaine, immediately identified Steppello as his

supplier and provided officers with Steppello's address and a description of his vehicle. 733 F.

Supp.2d at 349. Further, at the direction of officers, the informant placed a telephone call to

Steppello and arranged a meeting whereby cocaine would be delivered that day. Id. Fifteen

minutes later, officers observed Steppello leave his residence, drive to the informant's house, and

was arrested with 111 grams of cocaine as he attempted to gain entry. Id. Suppressing the search

of Steppello as a warrantless intrusion lacking probable cause, the District Court found

paramount that "there was no independent corroboration of [the informant's] allegation of

defendant's drug dealing," and "a complete lack of suspicious behavior" on the part of the

defendant as observed by authorities. Id. at 351-352.

Here too, at the time of the search, agents had "no reason to believe [Johnson] intended to

[participate in a narcotics conspiracy] but for the uncorroborated account of a criminal informant

with no track record of providing reliable information." Id. at 352. Indeed, officers made no

apparent attempt to corroborate CW-1's claim concerning the contents of the defendant's vehicle

besides "look[ing] into the interior of the Jeep," and observing "a package in similar size and

shape to [the substitute package],"[7] a level of verification below even <u>Steppello</u>. Ex. C at ¶ 8; <u>see</u> <u>also</u> <u>Atkinson</u>, 653 F. Supp. at 673-74 (untested informant's uncorroborated claims did not give rise to probable cause).   Moreover, agents had only been made aware of the shipment the day before (Ex. C at ¶ 5) and had no idea whom its actual recipient was until CW-1 took delivery of the substitute package.  With that in mind, agents could have corroborated only very little by independent investigation concerning the conspiracy's other potential members.

Finally, should this Court find that probable cause existed to search Johnson's vehicle, under these facts alone, the government would have had sufficient probable cause to search <u>virtually any vehicle in the area pointed out by the informant</u>, thereby "eviscerat[ing] the protections of the Fourth Amendment." <u>Arizona v. Hicks</u>, 480 U.S. 321, 334 (1987). Accordingly, all items seized pursuant to the warrantless search of Johnson's Jeep should be suppressed, or in the alternative, a hearing held to further examine the issue.  <u>Pena</u>, 961 F.2d at 338.

### 3.    Because Neither an Inventory Search, Nor Impoundment of the Vehicle Was Allowable, Inevitable Discovery Does Not Apply

As noted, <u>supra</u>, Johnson was nowhere in the vicinity of his vehicle when he was arrested; while the Jeep was seized in Manhattan, the defendant was arrested Queens.  Since Johnson was arrested in a remote location from his vehicle <u>after it had been seized</u>, agents could not legally impound or perform a warrantless search thereof.[8]  <u>United States v. Duguay</u>, 93 F.3d 346, 351

---

[7] As the September 8, 2010 discovery inspection exposed, the package that agents observed was a plain brown 15"x11"x17" cardboard box with no shipping label.

[8] SA Johnston's affidavit makes clear that the vehicle was searched <u>and then</u> "later that same day" surveillance took place, resulting in the defendant's arrest.  Ex. C at ¶¶ 9-10.

(7th Cir. 1996) ("Both the decision to take the car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment"); see also Soldal v. Cook County, Ill., 506 U.S. 56 (1992).

Impoundments may be done in furtherance of "public safety" or "community caretaking functions" of police, like removing "disabled or damaged vehicles," and automobiles which "jeopardize both public safety and the efficient movement of vehicular traffic." Opperman, 428 U.S. at 368; Duguay, 93 F.3d at 352; United States v. Miner, 956 F.2d 397, 399 (2d Cir. 1992). Impoundments must either be supported by probable cause, or occur in furtherance of the obligations of the police as a "caretaker" of the streets and completely unrelated to an ongoing investigation. Duguay, 93 F.3d at 352; Bertine, 479 U.S. at 375 (Police officers may exercise their discretion in deciding whether to impound a vehicle, so long as that discretion is "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity") (emphasis supplied); cf. Illinois v. Lafayette, 462 U.S. 640,(1983) ("inventory search is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration"). While a warrantless inventory search of an impounded vehicle may be permitted by the Fourth Amendment, illegal seizure of the vehicle will result in the suppression of all evidence discovered pursuant thereto. United States v. Jenkins, 876 F.2d 1085, 1089 (2d Cir. 1989) ("before an inventory search is permissible, the government must have legitimate custody of the property to be inventoried").

Here, no legitimate reason existed to impound Johnson's vehicle since: 1) as discussed, supra, no probable cause existed for the search; and 2) the seizure occurred prior to his arrest, in a separate borough, and therefore, there was no reason to believe that the vehicle would be

abandoned or left to impede traffic as the owner had not yet been detained. Simply, there was no "caretaking" function for the agents to perform here - the vehicle was improperly seized <u>only</u> to investigate potential criminal activity. <u>Bertine</u>, 479 U.S. at 375; <u>Duguay</u>, 93 F.3d at 352. Accordingly, all evidence obtained pursuant to the illegal search of the vehicle must be suppressed. <u>Jenkins</u>, 876 F.2d at 1089.

### B.    The Search of 209-03 41st Avenue Occurred Before Agents Received a Warrant and Eclipsed the Scope of the Arguably Permissible Protective Sweep

#### 1.    Background

On April 28, 2010 at approximately 3:00 p.m., agents purportedly observed Johnson and codefendants Derek English and Ronald Anderson enter 209-03 41st Avenue, a two-family house located in Bayside, Queens. <u>See</u> Ex. C at ¶ 10; May 3, 2011 Affidavit of Rodney Johnson, at ¶ 3.[9] The defendants had arrived in two separate vehicles: Anderson and Johnson in an Audi parked on the street, and English in a Honda parked in the driveway. Ex. C at ¶ 10. No other vehicles were present in the driveway, nor were other persons present in the apartment. Ex. F at ¶ 4. Approximately ten minutes later, English exited through the side door of the building, entered the Honda, and was arrested in the driveway as he attempted to leave in his vehicle. Ex. C at ¶ 10.

According to agents, subsequent to English's arrest, they "secured the stash house and conducted a protective sweep" during which "Johnson and Anderson were placed under arrest." Ex. C at ¶ 10. A search warrant for the premises was received by agents at 4:48 p.m. and purportedly executed at 5:15 p.m. that day. <u>See</u> April 28, 2010 Search Warrant for 209-03 41st

---

[9] Attached as Exhibit F.

Avenue.[10]  In the apartment, agents uncovered two kilograms of cocaine, adulterants and a scale in the kitchen, money in the living room, a firearm[11] and a "kilo press" in the hallway closet, a second "kilo press" in the bedroom, and various packaging materials throughout the unit and in garbage bags.  Ex C. at ¶ 10; Ex. G at p. 2.

###     2.     The Search Occurred Before a Warrant Was Obtained

According to the government, at approximately 5:00 p.m. all three defendants had arrived for processing at the Drug Enforcement Agency ("DEA") headquarters, located at 99 Tenth Avenue in Manhattan - over fifteen miles and more than one hour away from 209-03 41st Avenue in Queens.[12]  Ex. F at ¶ 8.  Consequently, and according to the government's own timeline, the defendants must have been in transport from Queens to Manhattan by approximately 4:00 p.m. at the latest, and had already arrived at the DEA headquarters when the search warrant for the apartment was executed at 5:15 p.m.  See id.  Defendant Johnson, however, was present throughout the agents' "thorough search," Payton v. New York, 445 U.S. 573 (1980), thus exposing the government's claim that it took place "pursuant to a judicially authorized []

_____

[10] Attached as Exhibit G.

[11] The inventory attached to the search warrant incorrectly notes the existence of a "Masterpiece .45 caliber machine gun" and a "house made silencer."  Ex. G at p. 2.  As briefed extensively in the bail applications of codefendants English and Anderson, the purported machine gun and silencer were merely an inoperable pistol without a sound suppression device.

[12] The government, by AUSA Santosh Aravind, provided to co-counsel the approximate time that the defendants arrived at the DEA headquarters in Manhattan.

warrant," as *false*. Ex. C at ¶ 10; Ex. F at ¶ 6. Simply put, agents disregarded their Fourth

Amendment obligations and proceeded with a complete search <u>before</u> it was lawful.[13]

### 3.    Johnson Maintains Standing to Challenge the Search

"To contest the validity of a search, a defendant must demonstrate that he *himself*

exhibited an actual subjective expectation of privacy in the area searched, and that this subjective

expectation is one that society is willing to accept as reasonable." <u>United States v. Fields</u>, 113

F.3d 313, 320 (2d Cir. 1997) (emphasis in original) <u>citing</u> <u>Smith v. Maryland</u>, 442 U.S. 735

(1979). While a defendant's "possessory interest" in the premises searched is a "factor generally

considered in determining the reasonableness of a defendant's expectation of privacy ... the lack

of such an interest does not rule out the possibility that he may still show [one]." <u>Fields</u>, 113

F.3d at 320 (internal citations omitted); <u>see also</u> <u>Rakas v. Illinois</u>, 439 U.S. 128, 142 (1978) (a

person may have a "sufficient interest in a place other than his own home so that the Fourth

Amendment protects him").

"For instance, where a guest has permission to use an apartment, is given a key, and uses

the apartment in the owner's absence, society may be prepared to recognize the guest's privacy

[interest]." <u>Fields</u>, 113 F.3d at 320 <u>citing</u> <u>Jones v. United States</u>, 362 U.S. 257, 259 (1960);

---

[13] Should the Court find that the search of 209-03 41st Avenue took place following the issuance of the April 28, 2010 Search Warrant, then Johnson is plainly entitled to an evidentiary hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978). Simply put, in the first paragraph of the Warrant's Affidavit, in the section marked "Probable Cause to Search the Premises," Agent Giraldo incorrectly leads the court to believe that "<u>the DEA intercepted</u> a Federal Express Package originating in California ... containing approximately 5 kilograms of cocaine." Ex. D at ¶ 8 (emphasis supplied). As the subsequent May 14, 2010 Affidavit correctly identifies, however, on "April 27, 2010, the DEA was <u>notified</u> that the Los Angeles County Sheriff's Department had intercepted [the] package ...." Ex. C (emphasis supplied); June 1, 2010 Laboratory Report of the Los Angeles County Sheriff's Department, attached as Exhibit H. Such an error grossly misstates the strength of the government's case at the time of the application.

United States v. Simmons, No. 02 Cr. 314 (JG), 2003 WL 145261, at * 7 (E.D.N.Y. January 9, 2003) (defendant's expectation of privacy in premises was demonstrated by, *inter alia*, possession of a set of keys); see also United States v. Hamilton, 538 F.3d 162, 168-69 (2d Cir. 2008) (standing to challenge search existed despite defendant's lack of keys or property interest). Finally, a District Court may not deny a defendant's suppression motion for lack of standing "unless the facts [] asserted, seen in the light most favorable to [the defendant], were legally insufficient to sustain his burden." Id. (emphasis supplied).

Here, there can be no doubt that Johnson maintains standing to challenge the search of 209-03 41st Avenue. While Johnson's name was not on the lease, he frequented the premises in the absence of the named leaseholder, maintained his own set of keys, and had the authority to exclude use by others. Ex. F at ¶ 3. As with the defendant in Hamilton, Johnson was not a guest, but an individual who possessed "free and frequent access ... [and] probably effective control" over the premises. Hamilton, 538 F.3d at 169. Accordingly, standing should be conferred, or a hearing held to determine the factual sufficiency of that issue. Id.

### 4. The Warrantless Search Eclipsed the Scope of a Protective Sweep

Even if one of the "carefully delineated" exceptions to the Warrant Clause (California v. Acevedo, 500 U.S. 565, 590 fn.5 (1991)) existed to permit entry into 209-03 41st Avenue, it only authorized a "limited protective sweep" affording agents the opportunity to look for dangerous persons or those who might destroy evidence. Buie, 494 U.S. at 334. Instead, agents immersed themselves in a "full-blown" (id. at 335 fn.3) warrantless exploration following Johnson's arrest, looking through closed containers, drawers, cabinets, and garbage bags throughout the apartment. Ex. F at ¶ 6.

"Searches and seizures inside a home without a warrant are presumptively unreasonable."

United States v. Karo, 468 U.S. 705, 714-15 (1984).  Moreover, the prohibition against the

unwarranted intrusion by officials into a home "extends to offenders as well as to the law

abiding."  United States v. Lefkowitz, 285 U.S. 452, 464 (1932).  There are two exceptions to the

"strict" rule against warrantless searches in a home or business: consent and exigent

circumstances.  Santos, 303 F. Supp.2d at 345.  When officers perform a warrantless search in a

location where an individual has a reasonable expectation of privacy, the government maintains

the burden of demonstrating that the search fell within one of the exceptions to the warrant

requirement.  United States v. Kiyuyung, 171 F.3d 83, 84 (2d Cir.1999).

Exigent circumstances exist where "police are in hot pursuit of a fleeing felon, or where

there is risk of imminent destruction of evidence, a need to prevent a suspect's escape, or risk of

danger to the police or other persons inside or outside the dwelling."  Id.  As the Second Circuit

listed in United States v. Reed, 572 F.2d 412, 424 (2d Cir. 1978):

> various factors [] may be used to determine whether "exigent
> circumstances" are present. These include (1) the gravity or violent
> nature of the offense with which the suspect is to be charged; (2)
> whether the suspect " is reasonably believed to be armed"; (3) "a
> clear showing of probable cause . . . to believe that the suspect
> committed the crime"; (4) "strong reason to believe that the suspect
> is in the premises being entered"; (5) "a likelihood that the suspect
> will escape if not swiftly apprehended"; and (6) the peaceful
> circumstances of the entry.[14]

quoting Dorman v. United States, 435 F.2d 385, 392-93 (D.C. Cir. 1970).  Essentially, "the

district court must determine, considering the totality of the circumstances ... whether law

---

[14] Therefore, the Court's determination that agents did not have probable cause to search
Johnson's vehicle would be a factor in considering whether exigent circumstances existed to
enter the apartment, arrest the defendant, and conduct a protective sweep.

enforcement agents were confronted by an urgent need to render aid or take action." United States v. Medina, 944 F.2d 60, 68 (2d Cir. 1991) (internal quotes omitted). Finally, officers cannot create the exigency that led to the warrantless search at issue. See id. at 69; Reed, 572 F.2d at 425; cf., United States v. MacDonald, 916 F.2d 766, 772 (2d Cir.1990).

Even where circumstances exist to permit the warrantless entry into a protected location, the government is not granted carte blanche to search the entire premises at will. United States v. Martino, 664 F.2d 860, 875 fn.6 (2d Cir. 1981); cf., Segura v. United States, 468 U.S. 796, 812 (1984) ("There is no evidence that the agents in any way exploited their presence in the apartment; they simply awaited issuance of the warrant"); see also Medina, 944 F.2d 60 ("protective sweep" was "properly conducted" by agents once inside the premises); United States v. Zadiriyev, No. 08 CR 1327 (HB), 2009 WL 1033365, at *3 (S.D.N.Y. April 17, 2009). Instead, the exception only permits a search that is "strictly circumscribed by the exigencies which justify its initiation." Mincey v. Arizona, 437 U.S. 385, 393 (1978); see United States v. Shakur, 560 F. Supp. 361, 364 (once exigency had subsided, agents were "not permitted to enter the apartment without a warrant"). As the Second Circuit noted in Martino:

> While [exigent] circumstances probably justified the agents' entry into [the defendant's] apartment, **they would have authorized no more than a quick security check of the premises to make sure no person was present and a posting of guards to be sure no person entered to destroy evidence before authorization for a search was obtained**.

664 F.2d at 875 fn.6 (emphasis supplied).

Other Circuits have explicitly agreed. See United States v. Murphy, 516 F.3d 1117, 1121 (9th Cir. 2008) (warrantless search not permitted once exigent circumstances had waned); United

States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992) ("[a]ny search following [a] warrantless entry for emergency reasons ... must then be limited by the type of emergency involved.  It cannot be used as the occasion for a general voyage of discovery unrelated to the purpose of the entry"); United States v. Martin, 562 F.2d 673, 677-78 (D.C. Cir 1977) (officer's belief that machine gun was in a carrying case did not justify a warrantless search once exigency had subsided).

Put another way, through the confines of a protective sweep, agents may "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Buie, 494 U.S. at 334-35 (emphasis supplied).  Such a "sweep" is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." Id. at 335.  Finally, this intrusive activity can last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Id. at 335-36; see also United States v. Agapito, 620 F.2d 324, 337 fn.20 (2d Cir. 1980) ("We did not suggest that an officer's interest in continuing an investigation after an arrest constituted a sufficient exigent circumstance to justify a warrantless search").

The arguments requiring suppression here are straightforward. First, the government maintains the burden of demonstrating that exigent circumstances existed permitting the warrantless entry into 209-03 41st Avenue. Kiyuyung, 171 F.3d at 84.  In this case, there was no "hot pursuit" (id.), agents were already present on the scene when the defendants arrived. Indeed, it should have come as no surprise to them that the defendants arrived at the location already under their "surveillance." Ex. C at ¶ 10.  Additionally, the government had copious time

to apply for a search warrant - the confidential informant began cooperating with authorities almost immediately following his arrest and subsequently accompanied agents to the apartment to confirm its location. Id. at ¶ 6. Finally, as discussed, supra, at **SUBPOINT A**, CW-1's uncorroborated allegations did not yield probable cause to believe that the defendant was participating in a narcotics conspiracy.

Second, to the extent that exigent circumstances did exist, agents engaged in pretextual conduct by arresting defendant English in the driveway (Ex. C at ¶ 10), therefore alerting the other defendants to their presence. Instead, agents could simply have arrested English further up the block and continued to wait until the warrant had issued. Cf., MacDonald, 916 F.2d at 771.

Third, the search of the premises should have, but did not, cease following Johnson's arrest. Ex F. at ¶ 6. Once English was arrested in the driveway and Anderson, exiting the front door, only Johnson remained in the building. See Ex. C at ¶ 10; Ex. F at ¶¶ 4-5. Following Johnson's subsequent arrest therein, agents were only arguably permitted a "quick security check" to ensure that no one else was present inside. Martino, 664 F.2d at 875 fn.6. Following that "check," agents should have secured the premises by posting guards at the two entrances and then waited for the warrant.[15] Id. At that point, any exigency had clearly subsided: there were no individuals left to arrest inside, and consequently, no threat of evidence destruction or danger posed by any potential weapon. Mincey, 437 U.S. at 393; accord Shakur, 560 F. Supp. 364.

Fourth, the items seized pursuant to the warrantless search were not in plain view and could not have been located during a "quick" sweep. Ex. F at ¶ 6; Martino, 664 F.2d at 875 fn.6;

---

[15] Moreover, counsel is aware of no "sufficient articulable facts" that pointed to the existence of another person in the residence which may have permitted a continued sweep following Johnson's arrest. United States v. Morgan Vargas, 376 F.3d 112, 116 (2d Cir. 2004).

see also United States v. Barone, 721 F. Supp.2d 261, 276 (S.D.N.Y. 2010) (defendant's gun found in upstairs closet was not in view, and thus could not have been properly seized during the protective sweep). Here, agents scoured cabinets, garbage bags, high shelves and closed containers - clearly locations from which no individual could "launch an attack" (Buie, 494 U.S. at 333), and beyond Johnson's immediate reach or "grab area." United States v. Blue, 78 F.3d 56, 60 (2d Cir.1996); see Arizona v. Gant, 129 S.Ct. 1710, 1719 (2009); Santos, 303 F. Supp.2d at 348 ("the protective sweep doctrine is limited in two ways-the sweep must be incident to a lawful arrest and confined to areas where a person could hide or that are within a suspect's grab area") (internal citation omitted). Indeed, Johnson was handcuffed and seated in the livingroom, placing him far from the reach of the purported weapon or any contraband. Ex. F at ¶ 6.[16]

Moreover, the seized items, which include an inoperable pistol that was located inside a duffle bag on a high shelf inside the hallway closet; packaging supplies, two kilograms of cocaine, a scale and adulterants found within kitchen cabinets, pantries and drawers; currency hidden in the livingroom; and packaging materials from within garbage bags - were not in plain view. Id. Accordingly, all of these items should be suppressed as the tainted fruit of a defective search, or in the alternative, a suppression hearing must be held. United States v. Blue, 78 F.3d 56, 58 (2d Cir. 1996); Medina, 944 F.2d at 63; United States v. Schaper, 903 F.2d 891, 894 (2d Cir. 1990) (all observing existence of suppression hearings following warrantless search).

---

[16] Additionally, co-defendants Anderson and English were brought back into the apartment (from outside) after the search had already begun and seated in handcuffs next to Johnson in the living room. Ex. F at ¶ 7.

## POINT IV

## THE GOVERNMENT SHOULD BE COMPELLED TO DISCLOSE ITS LIST OF WITNESSES

The government should be compelled to provide a list of its witnesses due to the difficulties the defendant faces in preparing for trial, the lack of detail provided in the indictment, and the government's inability to make a credible claim that witnesses will be subject to intimidation or danger should their identities be revealed.

A district court has discretion to compel pretrial disclosure of government witnesses. United States v. Triana-Mateus, No. 98 Cr. 958 (SWK), 2002 WL 562649 (S.D.N.Y. April 15, 2002). The burden, however, is on the defendant to make a "specific showing that disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." Cannone, 528 F.2d at 300-01. In considering whether to order disclosure of the government's list of witnesses, courts in this district have frequently looked to the factors set out in United States v. Turkish, 458 F. Supp. 874, 881 (S.D.N.Y. 1978):

> (1) Did the offense alleged in the indictment involve a crime of violence? (2) Have the defendants been arrested or convicted for crimes involving violence? (3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)? (4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial? (5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult? (6) Do the defendants have limited funds with which to investigate and prepare their defense?

United States v. Rueb, No. 00 Cr. 91 (RWS), 2001 WL 96177 (S.D.N.Y. February 5, 2001).

Application of these factors to the instant case leads to the determination that the defendant can make a specific showing of need for disclosure of the names of the government witnesses. While Count Two's § 924(c) charge is a crime of violence, there has been no evidence presented to counsel that suggests that any violence actually occurred in this case, nor does Johnson have any history of violence. Additionally, while the charged conspiracy took place over a single day, the lack of any particularity in the indictment is daunting. Finally, the fourth factor - the possibility that the release of the names of the witnesses will increase the likelihood that they will not appear at trial - can hardly be argued here. The government has not claimed that Johnson has ever obstructed justice or is a danger to others. For all these reasons, the defendant requests an order compelling the government to provide the names and addresses of its witnesses.

## POINT V

### THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE RULE 404(b) EVIDENCE SIXTY DAYS BEFORE TRIAL

The defendant requests disclosure of Rule 404(b) evidence 60 days before trial. As shown above, the indictment proffers almost no detail as to the charged conspiracy and there is no realistic possibility of any threat to the safety of prospective witnesses in this case.

Rule 404(b) of the Federal Rules of Evidence requires the government to provide "reasonable notice" in advance of trial of its intent to use other act evidence. The purpose of the notice provision is "to reduce surprise and promote early resolution" of any challenge to admissibility of the proffered evidence. Fed.R.Evid. 404(b) Advisory Committee's Notes.

"While notice is typically provided no more than two to three weeks before trial, a longer period is appropriate [where there is an] absence of any threat to the safety of prospective witnesses and the ... Rule 404(b) evidence [is important to] this action." Nachamie, 91 F. Supp.2d at 577 (internal citations and quotations omitted).

A survey of Southern District decisions reflects a wide range of time periods determined by courts to be reasonable for purposes of Rule 404(b) disclosure. In United States v. Reddy, 190 F. Supp.2d 558 (S.D.N.Y. 2002), Judge Swain determined that a lengthy of 45 days was reasonable. In Lino, this Court determined that 60 days was reasonable. See also United States v. De Yian, No. 94 Cr. 719, 1995 WL 368445 (S.D.N.Y. June 21, 1995(Cote, J.) (Judge Cote ordered disclosure four months prior to trial); United States v. Aronson, No. 98 Cr. 564, 1999 WL 97923 (S.D.N.Y. Feb. 24, 1999) (one month prior to trial).

Accordingly, due to the vagueness of the conspiracy charge and the lack of any potential threat to prospective witnesses, the defendant respectfully requests that the government be compelled to provide Rule 404(b) notice 60 days prior to trial to avoid any unfair surprise and to permit the defendant to properly investigate any new allegations.

## POINT VI

### THE DEFENDANTS ARE ENTITLED TO PRETRIAL DISCLOSURE OF ANY AND ALL INFORMATION FALLING WITH THE PURVIEW OF *BRADY V. MARYLAND* AND ITS PROGENY

Independent investigation of CW-1, who is likely to testify in this case, has already determined that he may have numerous prior convictions in addition to his pending charges.

25

Because it may take a significant amount of time to locate and verify the full details of each of his prior arrests <u>after</u> counsel has been notified as to their existence, full <u>Brady</u> disclosure should be made on an early and continuing basis to prevent any delay of trial. 373 U.S. at 87.

Under <u>Brady</u>, the Government is obligated to provide favorable evidence to the defense where the evidence is material to guilt or punishment. <u>Id.</u>; <u>In re United States v. Coppa</u>, 267 F.3d 132, 139 (2d Cir.2001). "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." <u>Coppa</u>, 267 F.3d at 139 (<u>citing</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972)). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). Only evidence that is material, as defined by the reasonable probability test set forth in <u>Bagley</u>, must be disclosed under <u>Brady</u>. <u>See</u> <u>Coppa</u>, 267 F.3d at 141 ("the current <u>Brady</u> law ... imposes a disclosure obligation narrower in scope than the obligation to disclose all evidence favorable to the defendant") (<u>citing</u> <u>Kyles v. Whitely</u>, 514 U.S. 419 (1995)) (internal quotation marks omitted).

As a general rule, <u>Brady</u> does not require immediate disclosure of exculpatory evidence and impeachment material upon defendant's request. <u>Coppa</u>, 267 F.3d at 146. "There is no <u>Brady</u> violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." <u>Coppa</u>, 267 F.3d at 144. In <u>Coppa</u>, the Second Circuit set the timing of <u>Brady</u> disclosures as follows: "[T]he prosecutor must disclose 'material' (in the <u>Agurs</u>/<u>Bagley</u> sense) exculpatory and impeachment information no later than the point at which a

26

reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." Coppa, 267 F.3d at 142. "[A] long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." Coppa, 267 F.3d at 144. Moreover, it is the Government's responsibility to determine what evidence is material and when such evidence should be disclosed in time for its effective use. See Coppa, 267 F.3d at 143 ("The prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached.") (citing Kyles, 514 U.S. at 437).

Accordingly, due to dearth of information provided by the Indictment and the amount of time that may be required to verify the details of the cooperating witness's convictions and other criminal activities, early Brady disclosure is requested.

### POINT VII

### JOHNSON JOINS IN THE MOTIONS OF HIS CODEFENDANTS TO THE EXTENT THAT THEY ARE APPLICABLE TO HIM

27

## CONCLUSION

For the foregoing reasons, defendant Rodney Johnson's motions should be granted in their entirety.

Dated:       New York, New York
             May 4, 2011

                              Respectfully submitted,


                              _____
                              **JEFFREY LICHTMAN, ESQ. (JL6328)**
                              **LAW OFFICES OF JEFFREY LICHTMAN**
                              750 Lexington Ave., Fl. 15
                              New York, NY 10022
                              Ph:  (212) 581-1001
                              Fax: (212) 581-4999
                              jhl@jeffreylichtman.com