UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────────x

UNITED STATES OF AMERICA

       V.                                              10 CR 431 (CM)

RODNEY JOHNSON,

        Defendant.

──────────────────────────────────────────x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

On July 14, 2015 this Court sentenced Rodney Johnson to 300 months' imprisonment following his conviction at trial on three counts: conspiring to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 846; 841(b)(1)(A); using and carrying firearms during the narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i); and possessing with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A). Johnson is presently incarcerated at FCI Fort Dix in New Jersey – his projected release date, with good time factored in, is October 9, 2031.

Before the Court is Johnson's motion for compassionate release filed pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. Johnson claims that he should be granted compassionate release based on a combination of (1) his serious health conditions, including a 2017 heart attack, chronic kidney disease, hypertension, and high

1

cholesterol, and (2) the spread of COVID-19 at FCI Fort Dix, which has been a hotspot for cases during the pandemic. (Defendant's Motion, Docket 649 at 3).

The Government opposes Johnson motion, arguing that he has failed to exhaust all administrative remedies required by the First Step Act and that, even if he had, a reduction in sentence would not be consistent with the sentencing factors the Court must consider under 18 U.S.C. § 3553(a).

The motion is denied.

<u>Compassionate Release</u>

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing

"extraordinary and compelling circumstances" warranting release.[1] Until recently, this Court—and many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. § 3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling circumstances."[2] That changed on September 25, 2020, when the United States Court of Appeals for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in the district court. *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has not been updated since the passing of the First Step Act—addressed only sentencing reduction motions initiated by the Bureau of Prisons. *Id*. In making clear that the district court was not constrained by the narrow grounds for

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.*, United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)   Medical Condition of the Defendant.—

    (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)   The defendant is—

        (I)   suffering from a serious physical or medical condition,

        (II)   suffering from a serious functional or cognitive impairment, or

        (III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. § 1B1.13 comment (n.1).

granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release," and that "Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at 237.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

<u>Administrative Exhaustion</u>

Johnson claims that on May 18, 2020, he filed a written request for compassionate release to the Warden at FCI Fort Dix. He has attached a copy of that request in his motion papers. (Dkt. No. 649, Exh. #14). However, the Government avers that the BOP has represented to it that the Warden at FCI Fort Dix never received a request for compassionate release from Johnson. There is also nothing in the record indicating that the Warden denied this request, or that he was otherwise aware of it.

Although these divergent positions present a thorny question of fact, this Court need not resolve the question in this instance. While I have previously concluded that the administrative-exhaustion requirement is mandatory and cannot be waived in the absence of the Government's

4

consent, it is of no moment in this case because Johnson's claim for compassionate release fails on the merits. The § 3553(a) factors strongly counsel against his release.

Johnson's Motion Before this Court

Post *Brooker*, in the context of a compassionate release motion predicated on an inmate's poor health and the risk of contracting COVID-19 in prison, the Court may now recognize the obvious: An inmate (1) in a Bureau of Prisons Facility with a high rate of COVID-19 infections, and (2) who suffers from health conditions found by the Center for Disease Control to place a person at an increased risk of suffering a severe outcome from Covid-19, has met the threshold "extraordinary and compelling" standard warranting compassionate release.

This is true for Johnson and is a conclusion that the government does not contest. Indeed, the government acknowledges that "Johnson's medical records demonstrate that, among other medical conditions, Johnson suffers from coronary artery disease (atherosclerosis), chronic kidney disease (stage 3), essential hypertension, and hyperlipidemia." (Dkt. No. 641 at 10). These conditions all heighten a person's risk for serious illness or death if he or she contracts COVID-19.  *See* Centers for Disease Control and Prevention, Coronavirus Disease 19 (COVID-19), "People With Certain Medical Conditions," available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 31, 2021). Johnson also suffered a heart attack in November 2017, for which he needed surgery.

Johnson has also already contracted COVID-19 once at Fort Dix, which has had over 2,000 inmates test positive for the virus. *See* BOP COVID-19 Dashboard, https://www.bop.gov/coronavirus/ (last visited March 31, 2021). Out of all of the federal correctional institutions in the nation, Fort Dix has had the *highest* number of inmate positives for COVID-19. Currently, there

5

are 15 inmates and 42 staff members testing positive for the virus.[3] *Ibid*. Needless to say, the Court does not dispute that it is far from an ideal place to be during a pandemic, especially for someone like Johnson.

However, even with these considerations in favor of granting compassionate release, the sentencing factors set forth at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)—strongly counsel against any reduction. Principal among those considerations is "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2) (A-C).

Johnson was convicted of multiple drug-trafficking offenses for his involvement in the "Rosemond" drug organization, a bicoastal cocaine-trafficking organization that moved hundreds of kilograms of cocaine across the country each week. (Dkt. No. 286 at 224). He was a trusted lieutenant and was an "integral part" of the organization "for many years" and "moved a lot of drugs" during that time. (Sentencing Transcript at 4). Johnson's drug-trafficking crimes were so serious that they warranted a mandatory minimum sentence of 25 years imprisonment.

Johnson was also involved in the murder of Lowell Fletcher, who was a rival of Johnson's drug organization. Although Johnson was not convicted of the murder—following a mistrial—I

---

[3] After dealing with numerous compassionate release motions over the last several months, I have learned that BOP statistical reporting for a particular facility does not always comport with, and often understates the actual infection rate at that facility.

stated at his sentencing that I believed Johnson was a "participant" of the murder and that there was "not a doubt in my mind, not the slightest, tiniest doubt that the night Mr. Fletcher was killed [Johnson] knew that was going on and [was] prepared to do whatever it took to ensure that it happened." (Sent. Trans. at 6, 8). All that may have prevented Johnson from being the one to pull the trigger was that he "didn't draw the first number." (Sent. Trans. at 8). A witness at trial testified that Johnson was present at the scene of the murder that evening, along with fellow members of his drug organization, and that Johnson destroyed the cell phone used to contact Fletcher that day to lure him to the scene of the murder. (Trial Trans. at 1649–79, Dkt. No. 298). The 300-month sentence that Johnson originally received was fully warranted, and he has served only a little more than half of it—less than half if good time is not factored in.

Johnson's criminal history also counsels against release. He has prior convictions for criminal possession of a weapon and sale of a controlled substance. (PSR ¶¶ 57–58). Johnson was released from state prison for these crimes in April 2008, and had been free for only around two years before being arrested for his federal drug-trafficking crimes and for the murder of Lowell Fletcher. (*Id*. at ¶ 58). He has also not been the most model inmate while incarcerated, most recently being cited for impermissibly possessing a hazardous tool in 2013. (Dkt. No. 641 at 13). Although Johnson has not been cited for anything since 2013, I would consider him more on the road towards rehabilitation rather than fully rehabilitated.

Releasing Johnson now, who has served only 130 months out of 300, undermines the § 3553 factors that this Court must consider when evaluating a compassionate-release motion.

The motion for compassionate release is denied.

Dated: April 1, 2021

Colleen McMahon
Chief Judge