UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

UNITED STATES OF AMERICA

     V.

RODNEY JOHNSON,

          Defendant.

---------------------------------------------------------------x

10 CR 431 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7 10 2024

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, J.:

On July 14, 2015 this Court sentenced Rodney Johnson to 300 months' imprisonment following his conviction at trial on three counts: conspiring to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 846; 841(b)(1)(A); using and carrying firearms during the narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i); and possessing with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A). Johnson is presently incarcerated at FCI Fort Dix in New Jersey – his projected release date is October 9, 2031.

Before the Court is Johnson's motion for compassionate release filed pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. (*See* Doc. 663 (Johnson *pro se* motion); Doc. 665 (Letter by counsel supplementing *pro se* motion)). This is Johnson's second such motion.  In his previous motion filed in 2020, Johnson claimed that

1

he should be granted compassionate release based on a combination of serious health conditions, and the spread of COVID-19 at FCI Fort Dix, which had been a hotspot for Covid-19 cases during the pandemic. (Doc. 649 at 3). Although the Court found that Johnson had demonstrated extraordinary and compelling circumstances justifying his release (the Court acknowledged the surging COVID-19 cases at Fort Dix, and Johnson's elevated risk of suffering a severe outcome if he were to become infected by the virus), the Court declined to grant defendant compassionate on the ground that a reduction in his sentence would not be consistent with the sentencing factors at 18 U.S.C. § 3553(a). (Doc. 653). Johnson appealed that denial to the Second Circuit, which affirmed by summary order on November 17, 2022. *See United States v. Johnson*, 21-940-cr, 2022 WL 16984529 (2d Cir. Nov. 17, 2022)

In his present compassionate release motion, Johnson implores the Court to grant him compassionate release to allow him to care for his mother, who has become incapacitated by terminal cancer.

The Government opposes Johnson's motion arguing that: (1) Johnson has failed to exhaust his administrative remedies with the BOP, (2) he has not shown that extraordinary and compelling circumstances warrant his release, and (3) reducing his sentence would be inconsistent with the factors set forth in 18 U.S.C. § 3553(a).

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i).

2

A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release. District courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). However, any reduction of a defendant's sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A). For several years after passage of the First Step Act of 2018, United States Sentencing Guidelines § 1B1.13, entitled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)," was "not 'applicable' to compassionate release motions brought by defendants …." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). But Guidelines § 1B1.13 was amended effective November 1, 2023, and now once again provides guidance for courts adjudicating compassionate release motions. *See United States v. Cromitie*, No. 09 CR 558-01 (CM), 2024 WL 216540, at *4 (S.D.N.Y. Jan. 19, 2024) ("On November 1, 2023, the Sentencing

3

Commission amended the Guidelines so that it now provides guidance for courts in deciding petitions initiated by both BOP and defendants.").

Of course, a court contemplating a defendant's release pursuant to § 3582(c)(1)(A)(i), must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

### Administrative Exhaustion

In order to meet the exhaustion requirement, the defendant "is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). This approach is consistent with the purpose of the exhaustion requirement because that requirement "is designed to allow the Bureau to bring 'a motion on the defendant's behalf,' before he moves on his own behalf." *Id.* (quoting 28 U.S.C. § 3582(c)(1)(A)). "And the Bureau cannot determine whether it should bring a compassionate-release motion if an inmate does not explain in his request the ground justifying his release." *Id.*

Here, Johnson has not exhausted his administrative remedies. Although Johnson claims in his *pro se* submission that he "submitted his written request for compassionate release based on emergency family circumstances to the warden at FCI Coleman," and "[m]ore than 30 days . . . passed without a response" (Doc. 663 at 2), Johnson has not produced any evidence to support that claim, and the Government represents that the Bureau of Prisons has been unable to locate such a request.

4

Accordingly, Johnson has failed to show that he has exhausted his administrative remedies and, therefore, his present motion is not properly before the Court.

### Johnson's Motion Before this Court

Even if Johnson's motion were not procedural infirm, his motion would fail on the merits.

Johnson asks the Court to release him so that he may care for his dying mother. His argument finds support in the Sentencing Commission amended policy statement that includes among its list of "extraordinary and compelling reasons" for a reduction in term of imprisonment: "the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." *See* U.S.S.G. 1B1.13(b)(3)(C).

The Court acknowledges, sadly, that Mr. Johnson's mother, Ms. Leslie Pretty, has been battling Stage IV lung cancer for over a year, and according to her doctor, her cancer is incurable. (Doc. 663 at Exhibits 2-4). According to counsel, Ms. Pretty is 68 years old. She retired from the New York State Department of Corrections after serving for 20 years as both a corrections officer and driver for the Chief of the Department. She lives by herself in her home in Roosevelt, New York. While she is currently being treated with chemotherapy every three weeks, her condition continues to deteriorate. Counsel represents that aside from traveling to medical appointments, "Ms. Pretty is essentially bed bound, . . . and needs help caring for herself on a daily basis at the most basic level." (Doc. 665 at 2).

In support of Johnson's argument that he is the only person that could provide his mother with the daily care she needs, Johnson has provided a letter from Dr. Nagashree Seetharamu, from Northwell Health. Dr Seetharamu letter reads, in its entirety:

> Ms. Leslie Pretty is receiving care at Zuckerberg Cancer Center for stage
> IV lung cancer. She has a severe, incurable condition and there is a need for

5

> ongoing chemotherapy. Due to her condition and side effects from treatment, she cannot take care of herself and needs help from family members. Her daughter [Ms. Thomas] is trying to help her, but she herself is a kidney transplant recipient and is dealing with her own health issues and medical appointments. This has made it *challenging* for her to take care of her mother. Ms. Leslie's son, Rodney Johnson can be of immense help in caring for her. assist with appointments and provide emotional support that she needs at this time. Please do not hesitate to call us if any questions or concerns.

(Doc. 663 at Exhibits 2) (Emphasis added).

While the Court has little doubt that Johnson would provide for his mother if he were released, and that "it would be an immense help" to his mother, Johnson has not demonstrated, as he must to meet his burden, that he is the *only* available caregiver for his mother. All Johnson has done in his motion is raise a question about Ms. Thomas's ability to continue in her role as her mother's caretaker. As Dr. Seetharamu carefully opined: "[Thomas's illness] has made it *challenging* [not impossible] for her to take care of her mother." Moreover, Johnson's motion does not address why there are no other persons in the community available to care for his mother— perhaps from extended family members, friends, or community groups. The conclusory statement that there is nobody else that can care for Ms. Pretty is woefully inadequate. For that reason, Johnson's motion fails on the merits, as well.

### The § 3553(a) Factors

But even if Johnson had made a better case for granting him compassionate release, the sentencing factors set forth at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction. *see* 18 U.S.C. § 3582(c)(1)(A)—strongly counsel against any reduction. Principal among those considerations is "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence

6

imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2) (A-C).

While the Court acknowledges that Johnson—now 50 years of age—has made great strides at rehabilitation (his only disciplinary citations in the past 10 years were for refusing to obey an order on a single day in 2020; and the BOP has recently categorized Johnson at a low risk of recidivism), the seriousness nature and circumstances of Johnson's offenses make a reduction in Johnson's sentence inappropriate.[1] In short, Johnson was a key member of the Rosemond Drug Organization, which moved as many as 100 kilograms of cocaine per week, and he played an integral part in the murder of Lowell Fletcher. Johnson was "for a very, very long time one of Jimmy Henchman's henchmen." (Sent. Tr. at 7). "A very, very awful drug ring" and a "violent thuggish group that ruined thousands of lives with its years of trafficking in significant amounts of drugs." *(Id.)*

Releasing Johnson now—even for the humanitarian reason he presses in his motion—would be inconsistent with the § 3553 factors that this Court must consider when evaluating a compassionate-release motion.

The motion is denied.

Dated: July 10, 2024

Colleen McMahon
United States District Court Judge

---

[1] For a recitation of Johnson's criminal conduct in the present case and his extensive criminal history, the reader is referred to the Government's Sentencing Memorandum. (Doc. 433).