UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

UNITED STATES OF AMERICA

v.

RODNEY JOHNSON,

Defendant.

——————————————————————x

10 CR 431-02 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5|13|2026

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, J.:

On July 14, 2015, this Court sentenced Rodney Johnson to 300 months' imprisonment following his conviction by a jury on three charges: conspiring to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 846; 841(b)(1)(A); using and carrying firearms during the narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i); and possessing with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A). Johnson is currently serving his sentence at FCI Coleman Low in Sumterville, Florida. He has been incarcerated since his arrest, which occurred in or about May 2010; he has, therefore, served approximately 16 years. Johnson's projected release date, accounting for good time credit, is October 9, 2031.

Before the Court is Johnson's motion for compassionate release filed pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. (Doc. 663 (Johnson

1

*pro se* motion); Doc. 665 (Letter by counsel supplementing *pro se* motion)).

This is Johnson's third such motion.

In his first motion filed in 2020, Johnson asserted that he should be granted compassionate release based on a combination of serious health conditions, and the spread of COVID-19 at FCI Fort Dix, which had been a hotspot for Covid-19 cases during the pandemic. (Doc. 649 at 3). Although the Court found that Johnson had demonstrated extraordinary and compelling circumstances justifying his release (the Court acknowledged the surging COVID-19 cases at Fort Dix, and Johnson's elevated risk of suffering a severe outcome if he were to become infected by the virus), the Court declined to grant defendant compassionate on the ground that a reduction in his sentence would not be consistent with the sentencing factors at 18 U.S.C. § 3553(a). (Doc. 653). Johnson appealed that denial to the Second Circuit; the Circuit affirmed by summary order on November 17, 2022. *See United States v. Johnson*, 21-940-cr, 2022 WL 16984529 (2d Cir. Nov. 17, 2022).

In his second compassionate release motion, filed in November 2023, Johnson argued that he was the only available caretaker for his mother Leslie Pretty, who had Stage IV lung cancer. (Dkt. 663). The Court also denied that motion, finding Johnson had not exhausted his administrative remedies, did not demonstrate extraordinary and compelling circumstances because he had not proven he was the only available caretaker, and that the § 3553(a) factors continued to counsel against release. (Dkt. 672).

In Johnson's present compassionate release motion, he argues that he has met his burden of demonstrating extraordinary and compelling grounds for release under U.S.S.G. § 1B1.13 (b)(3) (family-circumstances provision), predicated on his need to care for his ailing mother who has

2

Stage IV lung cancer. He also relies on § 1B1.13 (b)(6) (unusually long sentence provision), claiming that his sentence is overly harsh in light of a recent change to the mandatory minimum sentences for his crimes of conviction. When Johnson was sentenced, the mandatory minimum sentence for his crimes of conviction was 25 years – a 20 years' mandatory minimum on the narcotics conspiracy count, and a consecutive 5 years' mandatory minimum on the gun count. Were he to be sentenced today, his statutory mandatory minimum would be 15 years – 10 years on the narcotics conspiracy count, and 5 years consecutive on the gun count — down from 25 years at the time of sentencing. Finally, Johnson also argues that his release is justified (presumably by § 1B1.13(b)(5) (the "catch-all provision")) because of his demonstrated rehabilitation while in prison. While it is Johnson's position that each of these grounds is sufficient when considered alone to grant his release, he argues that when considered together "their *combined* weight surely rises to the necessary level." (Dkt. 681).

The Government opposes compassionate release. It argues that the grounds Johnson has asserted do not constitute extraordinary and compelling grounds for early release, and that the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh "decisively" against any reduction in sentence. (Dkt. 677 at 17).

### Background

Johnson was a co-conspirator, enforcer, and trusted lieutenant of one James Rosemond, a notorious "hip hop" music promoter who also ran a vast cocaine trafficking organization that shipped hundreds of kilograms of cocaine from Los Angeles to New York City. (Pre-Sentence Investigation Report dated September 11, 2014. ("PSR") ¶ 19). In connection with his music business, Rosemond, with Johnson's assistance, carried out a long-running violent feud with a rival

3

music business and hip-hop group called "G-Unit," which culminated in multiple shootings and a murder. (PSR ¶ 19). Trial evidence demonstrated beyond a reasonable doubt that Johnson was a key associate of Rosemond's for many years. He worked as a senior cocaine distributor for the Rosemond Drug Organization. The Rosemond Drug Organization trafficked enormous amounts of cocaine between 2008 and 2010, the period encompassed by the indictment against Johnson. Abdullah, Johnson's supervisor in the Rosemond Drug Organization, testified that, by the end of 2008, the Rosemond Drug Organization was receiving 30 to 40 kilograms of cocaine in New York per week, and that the group had received as many as 100 kilograms of cocaine in a single week. (Tr.. at 323). Abdullah also testified that Johnson was personally distributing 10 kilograms of cocaine per week: "Towards the end of 2008, the beginning of [2009]" that amount "increased [to] 10, 12, 15" kilograms per week. (*Id.* at 322). Bryan James (a drug trafficker who later became a cooperating witness for the Government) testified that he was "[a]lways with [Johnson]" when making pickups of cocaine, estimated that he picked up over 300 kilograms of cocaine in 2009 and 2010. (*Id.* at 843, 854). Johnson was convicted on Counts Five through Seven of the controlling Indictment, which related to this drug activity and the associated gun charge.

The Government also introduced considerable evidence that Johnson backed up the shooter in connection with the murder-for-hire of a Rosemond rival named Lowell Fletcher and delivered a kilogram of the Rosemond Drug Organization's cocaine as payment for the Fletcher murder (Counts One through Four of the controlling Indictment). The jury was deadlocked on these counts, and the Government, having secured a conviction on drug and gun counts with mandatory

minimum sentence of 25 years, decided not to retry Johnson for his participation in the murder.[1] It argued that the court should consider the extensive evidence of his participation in the Fletcher murder to enhance Johnson's sentence. But while admitting that I found the evidence of Johnson's participation in the murder to be persuasive – indeed, I said that it appeared to me that Johnson was ready to "do whatever it takes" to get Fletcher killed (Sent. Tr. at 7-8) -- I declined to enhance his already "Draconian" mandatory minimum sentence on the basis of conduct for which he had not been convicted (though he was most certainly not acquitted). Instead, on July 15, 2012, this Court sentenced Johnson principally to the applicable mandatory minimum term, which was 300 months.

Johnson's Guidelines range on the crimes of conviction was 240 to 293 months, based on an adjusted offense level of 36 and a criminal history category of III. However, because the Government had previously filed a prior felony information under 21 U.S.C. § 851, based on a 1990 New York conviction for criminal sale of a controlled substance in the third degree in violation of N.Y. Penal Law § 220.39, Johnson's mandatory minimum sentence was 25 years: 20 years on the drug conspiracy counts and 5 years consecutive on the firearm count. (PSR ¶¶ 5, 140, 183.) The statutory maximum on Johnson's counts of conviction was life imprisonment.

---

[1] The Government did retry Rosemond, but not Johnson on those counts, as to which the jury hung at the first trial. Rosemond was convicted on all counts at the second trial; however, the Second Circuit reversed the convictions and remanded the case for further proceedings.

At Rosemond's re-trial (his third trial) in November 2017, preside over by the Hon. Lewis A. Kaplan, the jury found Rosemond guilty of all of the counts against him, namely: (1) conspiring to commit the murder for hire of members of a rival music business that resulted in Fletcher's murder, in violation of 18 U.S.C. § 1958 (the "Murder Conspiracy Count"); (2) committing the murder for hire of Lowell Fletcher resulting in Fletcher's death, in violation of 18 U.S.C. §§ 1958 and 2 (the "Substantive Murder Count"); (3) using and aiding and abetting the use of firearms, at least one of which was discharged, in furtherance of the Murder Conspiracy Count, in violation of 18 U.S.C. §§ 924(c) and 2 (the "924(c) Count"); and (4) using and aiding and abetting the use of a firearm to cause Fletcher's murder, in violation of 18 U.S.C. §§ 924(j) and 2 (the "924(j) Count). On November 8, 2018, Judge Kaplan sentenced Rosemond, principally, to life in prison.

The Court noted at sentencing that Johnson was "an integral part of [Rosemond's] drug organization for many years and . . . moved a lot of drugs." (Sentencing Transcript at 4, 7-8, Dkt. 641-1). And while I observed that the 25-year mandatory minimum was "Draconian," I nevertheless found the sentence to be appropriate, stating that Johnson's participation in the drug organization was "fully worth" the 20 year mandatory minimum, and that I had "no compunction" about imposing a 25-year sentence, because it "accurately reflects the nature and the circumstances of the offense, the history and characteristics of the defendant, the need to punish him for his conduct and the need to protect society from further criminal conduct on his part." (*Id.* at 4-9.)

Compassionate Release

Pursuant to 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." *See* § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then "consider the full slate of extraordinary and compelling reasons that an

6

imprisoned person might bring before them." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). However, any reduction of a defendant's sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582 (c) (1) (A).  The relevant policy statements are set forth at § 1B1.13 of United States Sentencing Guidelines. Specifically, courts may consider a defendant's medical circumstances (§ 1B1.13(b)(1)), age (§ 1B1.13(b)(2)), family circumstances (§ 1B1.13(b)(3)), history of abuse (§ 1B1.13(b)(4)), whether the defendant is serving an unusually long sentence (§ 1B1.13(b)(6)); as well as any other significant reason (§ 1B1.13(b)(5)).

As noted above, Johnson argues in his present motion that he qualifies for relief under three of the § 1B1.13 policy statements: the unusually long sentence provision (§ 1B1.13(b)(6)), the family circumstances provision (§ 1B1.13(b)(3)), and the other reasons or "catch all" provision (§ 1B1.13(b)(5).

Neither the amendment to the Guidelines nor the Circuit's decision in *Brooker* changed the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must also consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they remain applicable, and determine whether they counsel for or against release. A court always retains discretion to deny a motion for compassionate release if, in its view, the § 3553(a) factors override what would otherwise present extraordinary and compelling circumstances for release.

Administrative Exhaustion

On March 3, 2025, Johnson filed an administrative request for a sentence reduction with the warden of FCI Coleman Low. (Dkt. 677). On March 31, 2025, the facility denied Johnson's request. *Id.* On May 1, 2025, Johnson filed the present motion. *Id.*  Accordingly, Johnson has

7

exhausted his administrative remedies, as required under 18 U.S.C. § 3582(c)(1)(A), and his present motion is properly before the Court for adjudication.

### Johnson's Motion Before this Court

*Johnson's "Unusually Long Sentence Argument"*

The unusually long sentence provision is applicable to defendants who (i) received an unusually long sentence, (ii) have served at least 10 years of the term of imprisonment, (iii) there has been a change in law that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and (iv) release would be consistent with defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

The Government argues that the Court should not consider er U.S.S.G. § 1B1.13(b)(6) as a basis for reducing Johnson's sentence because (1) the Sentencing Commission exceeded its statutory authority when it adopted this particular guideline; and (2) even if the section were a constitutional exercise of the Commission's authority, the change in law, as applied to Johnson's case, would still not give rise to extraordinary and compelling circumstance warranting his release. The Government points out that the Court made clear at sentencing that a 25-year sentence was appropriate and fully warranted by Johnson's conduct -- regardless of the mandatory minimum.

Johnson's argument that his 25 years sentence was rendered "unusually long" because the mandatory minimums were subsequently reduced rests on a presumption that, if the Court were sentencing him today, it would impose a significantly lower sentence, one predicated on the current 15 years mandatory minimum. But Johnson's Guidelines calculation (which was driven by drug quantity, not by the enhanced mandatory minimum under 21 U.S.C. § 841(b)(1)(A) and 851) exceeded 15 years by a substantial order of magnitude. Even without any enhancement for his

8

prior felony drug felony conviction, Johnson's adjusted Guidelines offense level was and remains 36, thanks entirely to the quantity of drugs he helped to move. And his criminal history category was and remains Category III. Thus, his guideline today is 235-293 months' imprisonment, without regard to the mandatory minimum. I note that the bottom of the guidelines range is just five months shy of the 20 years I said that he deserved for the drug charges alone, while the top of his Guidelines is just shy of the 25 years he got for the drug and gun charges together.

The only way that I would have sentenced Johnson to 15 years back in 2012 is if I had been inclined to vary from the guidelines and give him a below guidelines sentence. I can say with substantial certainty that I never would have done any such thing. I have been on the bench for nearly 30 years now. The Rosemond drug trafficking organization stands out as one of the most prolific drug trafficking organizations, in terms of quantity of drugs distributed, with which I am familiar. Given Johnson's significant role in the Rosemond DTO, and his possession of firearms in furtherance of that organization, I would not have given Johnson a below guidelines sentence and I very likely would not have sentenced him at the low end of the guidelines. I probably would have sentenced him toward the top end of his guideline – especially since he was still subject to the mandatory 5-year sentence on the gun charge. So, I cannot say that the nonretroactive change in the law makes Johnson's original sentence either "extraordinary" or gives rise to a "compelling" reason to adjust it retroactively.

Courts in this Circuit have construed the "gross disparity" requirement of § 1B1.13(b)(6) narrowly and have reserved relief for cases involving dramatic sentencing differentials. For example, in *United States v. Rodriguez*, No. 10 Cr. 905 (LTS), 2024 WL 3862051, at *3 (S.D.N.Y. Aug. 19, 2024, Chief Judge Swain concluded that "there would be no gross disparity between a

180-month sentence and the 240-month sentence that was imposed," noting that "courts in this Circuit and elsewhere have interpreted the term 'gross disparity' to refer to disparities that far exceed the one presented in this case." There, Judge Swain emphasized that the defendant's 240-month sentence was "only 5 months more than 235 months, the top of the new Guidelines range that would apply if [the defendant] was sentenced today." *Id.* This proximity to the Guidelines range demonstrated that the sentence was not "unusually long" and that any disparity was not "gross." *Id.*

And in *United States v. Mighty*, 2025 WL 3456894, at 1 (2d Cir. Dec. 2, 2025), a Second Circuit panel affirmed denial of a sentence reduction motion for a defendant in virtually identical circumstances to Johnson.. Like Johnson, Mighty argued that his 300 month sentence was unusually long and grossly disparate because his prior state drug conviction no longer triggered the enhanced 20 year mandatory minimum under current law (reducing his mandatory minimum from 240 months to 120 months). *Id.* The district court found no gross disparity, explaining that "while it is true that [Mighty] would no longer face a mandatory minimum sentence of 240 months, his 240-month sentence still falls within the guideline range [of 210 to 262 months]" and "[h]e would also still be subject to the mandatory five-year consecutive sentence for possession of a firearm." *Id.* (alteration in original). The Second Circuit affirmed, holding that the district court did not abuse its discretion, though relying on its analysis of the Section 3553(a) factors. *Id.* at 2.

For this reason, any changes to the sentencing laws that resulted from Congress's passage of the First Step Act of 2018 and the Second Circuit's decisions in *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023) and *United States v. Chaires*, 88 F.4th 172 (2d Cir. 2023), as applied to the Johnson's circumstances, did not render Johnson's sentence "unusually long." This is not one

10

of the grievous cases where these same changes to the sentencing laws created a "gross disparity" that would render a defendant's sentence unusually long. There is, therefore, no extraordinary basis warranting a reduction in that sentence, pursuant to § 1B1.13(b)(6).

*Johnson's Family Circumstances*

Johnson contends that his early release is warranted because he is needed to serve as a caregiver for his mother, Leslie Pretty, who is battling Stage IV lung cancer. The Court previously found in denying Johnson's second motion to reduce his sentence in July 2024, that Johnson failed to demonstrate that he is the only available caregiver for his mother. (Dkt. 672 at 6). Johnson argues, as he did in his last motion, that the only alternate potential caretaker – his sister, Kimberly Thomas – cannot provide her mother with care because Ms. Thomas suffers from chronic kidney disease.

Johnson's current motion offers no materially new information beyond what was presented in his prior one. He does not explain why only Ms. Thomas could serve as Ms. Pretty's caretaker; he does not explain what efforts have been made to obtain assistance from other family members, friends, community resources, or professional caregivers. He does not submit updated medical records or sworn statements from Ms. Pretty's treating physicians to establish that Johnson's release is medically necessary in order for Ms. Pretty to receive care. I do not even know what type of care Mr. Pretty needs on a day-to-day basis. The letter from Dr. Seetharamu submitted with Johnson's prior motion stated only that Johnson "can be of immense help" and that his sister's illness has made it "challenging" for her to care for her mother. (Dkt. 663, Ex. 2). But such statements fall well short of establishing that Johnson is the sole available caregiver. Indeed, as Judge Furman recently explained, if such circumstances "were enough to satisfy U.S.S.G. § 1B1.13(b)(3) . . . it would

11

(subject to the Section 3553(a) factors) effectively provide every family of a defendant with an elderly parent or minor child a get-out-jail-free card; other family members would merely have to say that they did not wish to care for the elderly parent or minor child." *Balouchzehi*, 2026 WL 205520, at *1.

As the Court observed in its July 2024 decision, "The conclusory statement that there is nobody else that can care for Ms. Pretty is woefully inadequate." (Dkt. 672 at 6). Johnson has presented no additional evidence in his present motion to cure that deficiency.

### *Johnson's Rehabilitation*

The Court acknowledges Johnson's efforts at rehabilitation. Johnson has participated in prison educational and self-help programs and has incurred few disciplinary infractions while in custody. However, post-sentencing rehabilitation, standing alone, cannot constitute an extraordinary and compelling reason for compassionate release. *See* U.S.S.G. § 1B1.13(d) ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."). Indeed, "district courts in this Circuit have widely held that rehabilitation through participation in prison programs and religious organization does not constitute an 'extraordinary and compelling' justification for release." *United States v. Bennett*, No. 15 CR. 95 (JPC), 2022 WL 3445349, at *3 (collecting cases) (S.D.N.Y. Aug. 17, 2022.)

### The § 3553(a) Factors

Even if Johnson had made a better case for granting him compassionate release, the sentencing factors set forth at 18 U.S.C. § 3553(a) — which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A) — continue to counsel against a reduction. Principal among those considerations is "(1) the nature and circumstances of

12

the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2) (A-C).

I again acknowledge—as I did above and in my last decision denying Johnson motion for early release—that Johnson (now, 52 years of age) has made solid strides at rehabilitation. He has incurred few disciplinary infractions while incarcerated, availed himself of BOP educational programs, has been classified by the BOP as being at a low risk of recidivism. But as I also said in my last decision, the serious nature and circumstances of Johnson's offenses make a reduction in Johnson's sentence inappropriate. Johnson was "for a very, very long time one of Jimmy Henchman's henchmen." (Sent. Tr. at 7). He played a key role in the Rosemond Drug Organization, which moved as many as 100 kilograms of cocaine per week. "A very, very awful drug ring" and a "violent thuggish group that ruined thousands of lives with its years of trafficking in significant amounts of drugs." (Sent. Tr. at 7).

Releasing Johnson now, even for the humanitarian reason he presses in his motion, would be inconsistent with the § 3553 factors.

Johnson's motion for compassionate release is denied.

The Clerk is directed to terminate the motions at docket #677.

Dated: May 13, 2026

Colleen McMahon
United States District Court Judge

13